**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**NEVADA PARTNERS FUND, LLC**                                    **PLAINTIFF**

**VS.**                                    **CIVIL ACTION NO. 3:06cv379-HTW-MTP**
                                    **(and ten consolidated cases)**

**UNITED STATES OF AMERICA**                                    **DEFENDANT**

**OPINION AND ORDER ON MOTION TO COMPEL**

This matter is before the court on the Motion to Compel [57] filed by Plaintiff requesting

the court to compel disclosure of certain documents withheld by the United States (the

"Government").  The court having considered the voluminous materials submitted by the parties,

the arguments of counsel during the discovery conference, an *in camera* inspection of samples of

documents withheld on the basis of privilege, and the applicable law, finds that the motion

should be GRANTED in part and DENIED in part.

FACTUAL BACKGROUND

This case involves partnership tax returns for 2001 by Nevada Partners Fund, Carson

Partners Fund, and Reno Partners Fund, which were filed during the Summer-Fall of 2002.  The

Government claims that these partnerships were formed as part of an illegal tax shelter called

FOCUS (Family Office Customized Partnerships), through which J. Kelley Williams, Sr. sought

to artificially generate a capital loss of over $18 million in order to offset a capital gain of over

$18 million.

In an effort to develop a coordinated approach to the audits of taxpayers participating in

FOCUS and other similar transactions, the Government set forth its analysis of these types of

1

transactions and the applicable law in two published documents– Notice 2002-50 and a Coordinated Issue Paper.[1]  The Notice 2002-50 was issued on July 15, 2002, and the Coordinated Issue Paper was published on May 24, 2005.  These documents described generic fact patterns which encompassed FOCUS transactions and other tax shelter products.  The Government claims that these documents did not deal specifically with Plaintiff's activities or the transactions at issue.

Based on the Government's conclusion that FOCUS and other similar transactions were contrary to law, the Government issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to Plaintiff on or about April 14, 2006, pursuant to 26 U.S.C. § 6223(a).[2]  The FPAA notified Plaintiff that the claimed deductions were not supported by the law and that penalties would be assessed for any resulting underpayment.

Plaintiff filed this action pursuant to Section 6226(a) of the Internal Revenue Code of 1986 to contest the Government's findings in the FPAA and to obtain a refund of its $100,000 deposit with the Government.[3]

Plaintiff filed its Motion to Compel [57] on December 5, 2007, seeking an order from the court compelling the Government to fully and properly respond to its first and second set of requests for production of documents.  Specifically, Plaintiff claims that the Government's responses to the following requests were insufficient, incomplete, and/or improper: Response

---

[1]*See* Exs. A and B [104] to Government's Supplemental Brief [91].

[2]*See* Ex. 1 to Plaintiff's Supplemental Brief [92].

[3]Plaintiff claims it deposited $100,000 with the IRS in accordance with 26 U.S.C. § 6226(e), "out of an abundance of caution."  *See* Complaint [1] at ¶ 9.

Nos. 1, 6, 13, 14, and 17 to Plaintiff's First Request for Production of Documents; and Response Nos. 1-6 to Plaintiff's Second Request for Production of Documents.  Plaintiff also requests the court to "compel the disclosure of documents Defendant listed in its privilege log as being withheld based on the deliberative process privilege and/or the attorney-client privileges to the extent this Court deems such privileges do not apply."  Motion [57] at 2.

The Government filed its Response [67] in opposition to Plaintiff's motion on January 14, 2008.  On January 22, 2008, the court entered an Order directing the Government to produce a copy of all documents being withheld based on the grounds of privilege to the court for an *in camera* inspection by January 29, 2008.  In compliance with the court's order, the Government produced three boxes documents to the undersigned's chambers on January 28, 2008.  The initial wave of records was followed by thousands more, leaving the court with approximately 30,000 challenged documents.

Since this production on January 28, 2008, the parties have filed numerous pleadings outlining their respective positions, including the following: Joint Status Report [83], Declaration Asserting the Deliberative Process Privilege [85], Supplemental Status Report [88], Supplemental Brief [91] filed by the Government, Supplemental Brief filed by Plaintiff [92], Plaintiff's Reply [94], and the Government's Reply [96].  Likewise, the Government has continued to produce additional documents and several hundred-page privilege logs for the court's consideration, totaling thousands of pages.  *See, e.g.*, Exs I - U [104] to Government's Supplemental Brief [91].

On April 11, 2008, the court conducted an in-person discovery conference with the parties in an effort to resolve some of the issues raised by Plaintiff in its Motion to Compel, to

narrow the issues and to hear argument.  A few disputes were resolved as set forth herein, but the parties remain far apart with respect to the discoverability of most of the records or information at issue.

ANALYSIS

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  The United States Supreme Court has held that the rules of discovery "are to be accorded a broad and liberal treatment."  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Indeed, "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  *Hickman*, 329 U.S. at 507; *see also United States v. Holley*, 942 F.2d 916, 924 (5th Cir. 1991).

However, the court must limit discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or when "the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).  This court is vested with broad discretion in establishing the scope of discovery.  *See Conboy v. Edward D. Jones & Co.*, 140 Fed. Appx. 510, 516 (5th Cir. 2005).

The parties disagree as to whether this case should be treated as a "refund case" or a

4

"deficiency case."  Plaintiff urges that this is a deficiency case, and therefore, once Plaintiff shows that the FPAA was arbitrary and capricious, the burden should shift to the Government to go forward with the evidence.[4]  The Government claims that this case should be treated like a refund case, which is a *de novo* proceeding where the taxpayer bears the burden of proving that it has overpaid its taxes, and where the court reviews the Government's conclusion and not the underlying findings and reasoning.[5]

This court makes a *de novo* determination of the FPAA adjustments made by the Government.  *See Jade Trading, LLC v. United States*, 80 Fed. Cl. 11, 43 (Fed. Cl. 2007).[6]  In *Sealy Power, Ltd. v. Commissioner of Internal Revenue*, 46 F.3d 382, 385-86 (5th Cir. 1995), the Fifth Circuit held that "an FPAA is the functional equivalent of a notice of deficiency." However, the court affirmed the Tax Court's ruling that the FPAA, which involved deductions and credits rather than unreported income, did not shift the burden of going forward with the evidence to the IRS.  *Sealy*, 46 F.3d at 387.

A notice of deficiency issued by the Government is "generally given a presumption of correctness, which operates to place on the taxpayer the burden of producing evidence showing that the Commissioner's determination is incorrect."  *Id*.  The Fifth Circuit noted that some courts in cases involving unreported income have shifted the burden to the Government when the

---

[4]*See* Plaintiff's Supplemental Brief [92] at 7-9.

[5]*See* Government's Supplemental Brief [91] at 4-5.

[6]*See* 26 U.S.C. § 6226(g) ("Any determination by a court under this section shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Federal Claims . . . .").

notice of deficiency is determined to be arbitrary or excessive. *See, e.g., Portillo v. Comm'r of Internal Revenue*, 932 F.2d 1128, 1133 (5th Cir. 1991); *see also Caracci v. Comm'r of Internal Revenue*, 456 F.3d 444, 457 (5th Cir. 2006). However, the court recognized that "[e]ven while carving out this exception to the general rule of presuming the determination correct, **courts have reaffirmed their reluctance to look behind the notice of deficiency to determine whether the Commissioner's determination is arbitrary**." *Sealy*, 46 F.3d at 386 (emphasis added); *see also Portillo*, 932 F.2d at 1133 ("The presumption of correctness generally prohibits a court from looking behind the Commissioner's determination even though it may be based on hearsay or other evidence inadmissible at trial").

The Fifth Circuit held that in a deduction case, the burden of overcoming the presumption of correctness "properly rests with the taxpayer, who is the best source of information for determining entitlement to the claimed deductions." *Sealy*, 46 F.3d at 387; *see also Transcapital Leasing Assoc. v. United States*, No. Civ.A. SA01CA0881-XR, 2006 WL 897723, at *27 (W.D. Tex. Mar. 31, 2006) ("The burden shifting does not apply where an FPAA challenges the taxpayer's right to tax deductions . . . ."). While recognizing the justification for the presumption of correctness generally afforded to the Government's assessment, the Fifth Circuit has held that the Government is not excused "from providing some factual foundation for its assessments." *Portillo*, 932 F.2d at 1133.

The Government's objections to the discovery requests at issue fall into several distinct categories, including relevancy, attorney-client privilege, deliberative process privilege, and the prohibition of 26 U.S.C. § 6103. Accordingly, the court will address the different categories of objections before reaching the specific requests.

Relevancy

In all of the disputed responses identified above, the Government initially asserted a

relevancy objection.[7]  The Federal Rules of Civil Procedure provide that

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense--including the
> existence, description, nature, custody, condition, and location of
> any documents or other tangible things and the identity and
> location of persons who know of any discoverable matter. For good
> cause, the court may order discovery of any matter relevant to the
> subject matter involved in the action. Relevant information need
> not be admissible at the trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence. . . .

Fed. R. Civ. P. 26(b)(1).  The term "relevant" in Rule 26 "has been construed broadly to

encompass any matter that bears on, or that reasonably could lead to other matter that could bear

on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340

(1978); *see also* 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice

& Procedure § 2008 (1970)  ("[R]elevancy is to be more loosely construed at the discovery stage

than at the trial").  However, the court must limit discovery otherwise allowed by the Federal

Rules of Civil Procedure when "the discovery sought is unreasonably cumulative or duplicative,

or can be obtained from some other source that is more convenient, less burdensome, or less

expensive" or when "the burden or expense of the proposed discovery outweighs its likely

benefit . . . ."  Fed. R. Civ. P. 26(b)(2)(C).

Deliberative Process Privilege

Plaintiff urges that the Government improperly asserted the deliberative process privilege

---

[7]The Government has withdrawn its relevancy objections for some of the requests at issue
as noted below in the specific requests.

in response to the following requests: Nos. 1, 13, 14, and 17 in the first set; and Nos. 1, 2, & 4-6 in the second set.  The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal citations and quotations omitted).  The party asserting the deliberative process privilege bears the burden of justifying the application, and the privilege is narrowly construed.  *Pacific Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 133 (Fed. Cl. 2006).  In order for the privilege to apply to a document, it must be both "pre-decisional" and "deliberative."  *Pacific Gas & Elec. Co.*, 70 Fed. Cl. at 133 (internal citation and quotations omitted).  To be considered "pre-decisional," the document "must address activities antecedent to the adoption of an agency policy."  *Id.* (internal citation and quotations omitted).  To qualify as "deliberative," the document "must address a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal policy matters."  *Id.* (internal citation and quotations omitted).  Only opinions and recommendations are protected by the privilege; factual findings and conclusions are not protected.  *Id.* at 134.

Moreover, several procedural requirements apply to the invocation of the deliberative process privilege.  *See Pacific Gas & Elec. Co.*, 70 Fed. Cl. at 136-44 (granting plaintiff's motion to compel based on government's failure to comply with procedural requirement to invoke the deliberative process privilege).  First, the head of the agency that has control over the requested document must assert the privilege, or in some circumstances, delegate the authority to assert the privilege.  *Id.* at 134; *see also Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981).  Second, the person asserting the privilege must state with particularity the information

subject to the privilege. *Pacific Gas & Elec. Co.*, 70 Fed. Cl. at 135. Third, "the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document." *Id.* (internal citation and quotations omitted). Finally, the proper time to make the showing that certain information is privileged is at the time the privilege is asserted. *Id.*

To support its claim of the deliberative process privilege, the Government submitted the Declaration [68-3] and Supplemental Declaration [85] of Richard G. Goldman. In his declaration, Mr. Goldman states that he is the delegated official with authority to properly claim the deliberative process privilege on behalf of the IRS. Mr. Goldman formally asserts that the following documents, consisting mostly of drafts of the Notice 2002-50 and internal documents regarding same, are protected by the deliberative process privilege: Bates No. Notice 2-3; 16-21; 24-104; 112-67; 225-33; 236-60; 262-83. Mr. Goldman also asserts that portions of the withheld documents contain tax information for unrelated third-parties and are protected by 26 U.S.C. § 6103(a).[8] In addition, Mr. Goldman formally asserts the deliberative process privilege for the documents set described in his 55-page Supplemental Declaration [85], primarily consisting of drafts of the Coordinated Issue Paper and internal communications and memoranda regarding same.

Additionally, the Government attaches the declaration [69] of Michael Desmond, Tax Legislative Counsel in the Office of Tax Policy at the U.S. Treasury Department, dated January 11, 2008. In his declaration, Mr. Desmond states that he is the delegated official with authority to properly claim the deliberative process privilege on behalf of the Treasury Department. Mr.

---

[8]*See* Declaration [68-3].

Desmond formally asserts that the documents described in paragraphs 12(a)-(u) of his

declaration, but not Bates labeled, are protected by the deliberative process privilege.  Mr.

Desmond also asserts that the documents described in paragraph 14(a) -(d) contain tax

information for unrelated third-parties and are protected by 26 U.S.C. § 6103(a).

<u>Attorney-Client Privilege</u>

Plaintiff urges that the Government improperly asserted the attorney-client privilege in

response to the following requests: Nos. 1, 13, 14, and 17 in the first set; and Nos. 1, 2, & 4-6 in

the second set.  Plaintiff also claims that the privilege is improperly asserted for the documents

listed on the privilege logs produced by the Government.   Plaintiff claims that this privilege is

improperly asserted because "Defendant cannot claim privilege as to facts as opposed to legal

opinions, not all communication appears to be the rendering of legal advice, and Defendant fails

to assert the privilege with specificity."  Memo. [58] at 10.

In its Response [67] to Plaintiff's Motion to Compel, the Government attaches the

declaration [68] of Leslie J. Spiegel, Senior Counsel with the Office of Division counsel, Large

and Mid-Size Business, of the IRS, dated January 14, 2008.  In her declaration, Ms. Spiegel

describes her job duties and states, *inter alia*, that her "communications with [IRS] employees

concerning the examinations at issue in this case occurred for the purpose of providing legal

advice."  Declaration [68] at ¶ 12.

The attorney-client privilege is the oldest of all recognized privileges, and its purpose is

to "encourage full and frank communications between attorneys and their clients and thereby

promote broader public interests in the observance of law and the administration of justice."

*Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005) (internal quotations and citation

10

omitted).  Generally stated, under this privilege, "an attorney may not disclose his client's confidences."  *Willy*, 423 F.3d at 495.  "Where the communications are of a confidential nature, are made between a client and his attorney, and are made for the purpose of seeking or giving legal advice, such communications are absolutely protected from disclosure by the attorney-client privilege."  *Buford v. Holladay*, 133 F.R.D 487, 491 (S.D. Miss. 1990).  However, the privilege does not protect against the disclosure of underlying facts, but only against the disclosure of the communications themselves.  *Buford*, 133 F.R.D. at 491.  Further, "to the extent that the attorney has obtained information from non-client third parties, the attorney-client privilege does not apply, and information which an attorney secures from a third party while acting on behalf of his client is not shielded from disclosure by the privilege."  *Id.*

### 26 U.S.C. § 6103

Plaintiff claims that the Government improperly asserted the prohibition of Section 6103 in its responses to the first set of requests for production, Nos. 6 and 17.  Plaintiff states that it is not seeking documents of "other taxpayers," but rather seeks documents that pertain to Nevada, Carson, Reno, and Mr. and Mrs. Williams, parties to this litigation.[9]

In general terms, 26 U.S.C. § 6103 provides that no employee or agent of the United States may disclose the returns or return information obtained in any manner in connection with his or her service as an employee, except as provided in that Section.  However, Section 6103 contains an exception which allows disclosure of returns and return information in court proceedings when "the treatment of an item reflected on such return is or may be related to the resolution of an issue in the proceeding or investigation."  26 U.S.C. § 6103(h)(2)(B).

---

[9]*See* Memorandum [58] at 14, 18.

11

<u>Specific Requests</u>

***First Request No. 1:*  Please provide all documents reviewed, prepared, or relied upon by Defendant in preparing any FPAA issued in this case.**

As an initial matter, the court overrules the Government's relevancy objections with respect to all documents "internally generated within the Internal Revenue Service . . . ."[10]  To hold otherwise would allow the Government to withhold the FPAAs, as those documents were internally generated within the IRS.  Certainly the request calls for some documents which may be relevant to this case, or which may lead to the discovery of admissible evidence.

However, the analysis does not end here, as the court agrees that the request is unreasonably broad and conceivably calls for documents reviewed by anyone at anytime, and includes privileged records and legal research.  Additionally, while some of the requested records are possibly relevant from a discovery standpoint, their relevance is marginal, given the *de novo* standard of review applicable to the FPAA adjustments and based on the fact that the court will not look behind the FPAA to determine whether the Government's determination was arbitrary. *See supra Jade Trading,* 80 Fed. Cl. at 43; *Sealy*, 46 F.3d at 386; *Portillo*, 932 F.2d at 1133.

The Government has indicated that it has produced all responsive documents with the exception of those withheld for privilege.  Specifically, the Government indicates that it has produced over forty-thousand pages of documents, including Plaintiff's audit file, the source documents relied on in drafting the FPAAs, a 19-page write-up prepared by the Government after the audit outlining its factual position, and all Plaintiff's records it reviewed.  *See* Government's Opposition Memorandum [70] at 1-2; Government's Supplemental Brief [91] at 2; Exs. C and D

---

[10]*See* Defendant's Response to Plaintiff's Requests for Production of Documents [58-4] at 2.

[104]  to Government's Supplemental Brief [91].  The information produced clearly allows Plaintiff to evaluate the basis for the Government's position and analysis of the transactions at issue and enables it to challenge or rebut the Government's position.

However, Plaintiff desires more and demands copies of every document ever generated at any time.  Aside from the marginal relevance, given the *de novo* standard and courts' reluctance to look behind the FPAA, the Government has asserted numerous privileges, primarily the attorney-client and deliberative process privileges.  The party asserting the privilege bears the burden of proving that the information requested is privileged.  *See In re Sante Fe Int'l Corp*., 272 F.3d 705, 710 (5th Cir. 2001).  Further, the party claiming a privilege must expressly make the claim and must "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. (B)(5); *see also* Local Rule 26.1(A)(c) ("A party withholding information claimed privileged . . . shall submit a privilege log that contains at least the following information: name of the document; description of the document; date; author(s); recipient(s); and nature of the privilege."); *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 486 (N.D. Miss. 2006) (citing *Simmons Foods, Inc. v. Willis*, No. 97-4192-RDR, 2000 WL 204270, at *5 (D. Kan. Feb. 8, 2000)) (stating that "a party asserting a privilege must provide sufficient information within the log so that the court and the requesting party can determine whether the log entry satisfies each element of the asserted privilege").

The Government has produced numerous privilege logs which adequately describe the documents withheld and identify the applicable privileges, including the attorney-client privilege

and the deliberative process privilege.  Rather than point out specific documents Plaintiff desires

to challenge or for which an *in camera* review may be appropriate, it challenges every document

contained on the privilege logs, reaching tens of thousands of documents.  This places an

unreasonable burden on the court and the parties, which is far outweighed by the documents'

marginal relevance.  *See Ardo v. Comm'r of Internal Revenue*, 104 T.C. 677, 692-93 (Tax Ct.

1995) (holding that production of draft statutory notices of deficiency was not reasonably likely

to lead to the discovery of admissible evidence and need not be produced); *see also United*

*Investors Life Ins. Co.*, 233 F.R.D. at 486 ("This court will not grant an in camera inspection

where, as here, there are potentially hundreds, perhaps thousands, of documents which would

require review.  To inspect the documents at issue in this action would constitute a great and

unnecessary expenditure of judicial resources."); Fed. R. Civ. P. 26(b)(2)(C) (stating that the

court may limit discovery when "the burden or expense of the proposed discovery outweighs its

likely benefit"); *Blanks v. Lockheed Martin Corp.*, No. 4:05cv137-LR, 2006 WL 1892512, at *2

(S.D. Miss. July 10, 2006) (applying balancing test set forth in Rule 26(b)(2)(C) to determine

whether the burden and expense of the proposed discovery outweighed its likely benefit).

Nevertheless, the court has inspected an extensive sample of the withheld documents in

an effort to resolve the discovery impasse and to accomplish the basic objective of the discovery

process.[11]  As for the documents withheld on the basis of the deliberative process privilege, a

_____

[11]The court reviewed a sampling of hundreds of pages from each group of documents
(totaling in the thousands) withheld by the Government.  The parties indicated in their Joint
Status Report ([83], p.3) that each side would identify fifty sample documents for *in camera*
review.  Thereafter, a sampling technique was again suggested by the Government in its
Supplemental Brief [91].  However, because the parties never identified a sample of documents
from the privilege logs, the court reviewed a random sample from each category of documents.
*See also Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 221 (D.C. Cir. 1993) (stating

sampling of the withheld documents reveals drafts of policies and regulations, research, analyses, which were both pre-decisional and deliberative, and information relating to taxpayers other than Plaintiff.  *See Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981) (holding that the EEOC's "internal working papers in which opinions [were] expressed, policies [were] formulated, and actions [were] recommended" were protected by the deliberative process privilege).  Further, the Government's assertion of the deliberative process privilege is supported by the declarations of Michael Desmond [69] and Richard G. Goldman [68-3] [85], which specifically describe the documents withheld based on the deliberative process privilege.  Therefore, the court finds that Government has met its burden of demonstrating the application of the privilege.

Plaintiff argues that the Government failed to properly assert the deliberative process privilege or otherwise waived the privilege.  However, given that Plaintiff's request was so broad and crafting a specific response was such a massive undertaking, it would be unreasonable to expect every document to be identified immediately.  Indeed, due to the voluminous records involved, the court granted both parties significant additional time to crystalize their positions.  Accordingly, the court finds no waiver of the privilege.  *See SCM Corp. v. United States*, 473 F. Supp. 791, 796 (Cust. Ct. 1979) ("Since executive privilege exists to aid the governmental decision-making process, a waiver should not be lightly inferred.").

Regarding the documents withheld on the basis of the attorney-client privilege, the court

---

that a court may appropriately review a representative sample of the disputed documents rather than "comb[ing] through a mountain of material" to determine which documents are privileged); *see also Vioxx Prods. Liab. Litigation v. Merck & Co.*, No. 06-30378, 06-30379, 2006 WL 1726675 (5th Cir. May 26, 2006).

has reviewed a sampling of thousands of the withheld documents, and finds that the documents reflect legal advice, opinions, research, and analyses.  The documents simply do not support Plaintiff's argument that Leslie Spiegel or Nate Stein were performing the duties of IRS examiners as opposed to counsel offering legal advice.  Moreover, the application of the attorney-client privilege is supported by the Declaration of Leslie Spiegel [68], except as otherwise set forth in this Opinion and Order.[12]  Accordingly, Plaintiff's motion to compel production of the requested documents is denied for the reasons set forth above.

> ***First Request No. 6:***  **Please provide all documents constituting copies of the original income tax returns or information returns filed by (I) The Plaintiffs, (ii) Bricolage Capital Management Co. (BCMC), (iii) Delta Currency Management Co. (Delta Currency), (iv) ASA Trading, LLC, (v) JJC Trading, LLC, (vi) Pensacola PFI Corp., (vii) Mr. and Mrs. J. Kelley Williams, (viii) E/MR, (ix) Bricolage Capital, LLC, and (x) any other individual or entity Defendant believes is relevant to this case for any tax period during the year 2000-present (including, but not limited to, any federal Forms 1040, 1041, 1065, 1120, or K-l filed by an of these persons).**

During the discovery conference on April 11, 2008, the parties resolved the dispute regarding this request.  The parties informed the court they could work out an agreement for items (I) - (viii); Plaintiff agreed that item (ix) was moot based on the Stipulation [106] agreed to by the parties; and for item (x), the Government agreed to produce the returns it deems relevant to this case pursuant to the Stipulation [106] agreed to by the parties.  Accordingly, this request is moot.

> ***First Request No. 13:*** **Please produce all documents relied upon and/or maintained by Defendant for Defendant's preparation of "Coordinated Issue Paper" for Notice 2002-50, as amended (U/L 9300.21-00).**

---

[12]In connection with other disputed document requests, the court addresses the applicability of the attorney-client privilege to specific documents.  For example, see *infra*, First Request No. 17, Second Request No. 3.

16

**First Request No. 14: Please produce all documents relied upon by and/or maintained by Defendant for the preparation of Notice 2002-50, 2002-2 C.B. 98.**

Because the court conducts a *de novo* determination of the adjustments made by the Government in the FPAA and does not look behind the FPAA in its determination, the court finds that the Government is not required to produce the documents responsive to this request, as the documents are not reasonably calculated to lead to the discovery of admissible evidence.[13] *See supra Jade Trading,* 80 Fed. Cl. at 43; *Sealy*, 46 F.3d at 386; *Portillo*, 932 F.2d at 1133. The court agrees that documents related to or involving Plaintiff's transactions would be relevant; however, the Government has indicated that no such documents exist.  To the extent such documents exist, Plaintiff is entitled to such documents.

Further, many of these documents are protected from disclosure by the attorney-client privilege.  The submissions by the Government, including the Declaration of Leslie Spiegel [68], demonstrate that Ms. Spiegel and Mr. Stein were acting in their capacities as attorneys for the purpose of providing legal advice.  *See supra*, *Buford v. Holladay*, 133 F.R.D 487, 491 (S.D. Miss. 1990).  The court's *in camera* review of a sampling of the documents withheld on the basis of the attorney-client privilege confirms this conclusion.

_____

[13]In ruling on the Government's Motion for Protective Order [50] to preclude the deposition of the author of the Coordinated Issue Paper, the court concluded that the factual foundations for IRS Notice 2002-50, 2002-2 C.B. 98 and its Coordinated Issue Paper are discoverable, as they are arguably relevant to the claims or defenses of the parties.  *See* Order [65].  However, just because Plaintiff was not precluded from asking questions regarding the factual foundation for these documents does not mean that Plaintiff is entitled to every piece of paper relied on and/or maintained by the Government in preparing the documents or that applicable privileges would be ignored.  In its discretion, the court permitted Plaintiff to inquire as to the factual foundations of the Notice and Coordinated Issue Paper.  *See* Order [65].

Regarding the documents withheld on the basis of the deliberative process privilege, the burden of reviewing the tens of thousands of documents, which include drafts and recommendations for governmental policies, is outweighed by the documents' marginal relevance.  *See supra, Ardo*, 104 T.C. at 692-93; *United Investors Life Ins. Co.*, 233 F.R.D. at 486; Fed. R. Civ. P. 26(b)(2)(C); *Blanks*, 2006 WL 1892512, at *2.

Nevertheless, the court's inspection of a sampling of the withheld documents reveals drafts of policies and regulations, research, analyses, and internal communications regarding same, which are both pre-decisional and deliberative.  *See supra, Branch*, 638 F.2d at 882 (holding that the EEOC's "internal working papers in which opinions [were] expressed, policies [were] formulated, and actions [were] recommended" were protected by the deliberative process privilege).  As previously stated, the Government's assertion of the deliberative process privilege is supported by the declarations of Michael Desmond [69] and Richard G. Goldman [68-3] [85], which specifically describe the documents withheld based on the deliberative process privilege, primarily consisting of drafts of the Notice and Coordinated Issue Paper and communications and memoranda regarding same.

Accordingly, Plaintiff's motion to compel regarding this request is denied for the reasons set forth above.[14]

> *First Request No. 17:* **Please provide all documents that discuss the ability or inability of Nevada, Carson, and/or Reno to generate a pre-tax profit from their investments at any point during 2001.**

During the discovery conference on April 11, 2008, the parties indicated that the dispute

---

[14]Once again, the court did not completely disallow discovery into the Notice and the Coordinated Issue Paper, but limited such discovery to the factual foundations of these documents, subject to the applicable privileges.  *See supra*, footnote 13.

regarding this request would be resolved.  However, the Stipulation [106] submitted by the parties leaves unresolved certain issues relating to this request.  The Government represented that it has produced to Plaintiff all documents prepared by Phillip Cocuzza, a financial products specialist employed by the IRS who assisted in the examination of the returns at issue, with the exception of communications between Mr. Cocuzza and Leslie Spiegel, for which it claims the attorney-client and deliberative process privileges, identified on privilege logs marked as Exhibits I and Q to the Government's Supplemental Brief [91].  The Government also redacted portions of the produced documents relating to other taxpayers, which it claims are protected from disclosure by 26 U.S.C. § 6103.

The court agrees that the requested documents are relevant, and unless privileged, should be produced.  Unlike the blanket objections to other responses, here Plaintiff has identified specific documents it desires the court to review.  Specifically, Plaintiff claims that the communications between Ms. Spiegel and Mr. Cocuzza identified on privilege logs marked as Exhibits I and Q to the Government's Supplemental Brief [91] are not protected by the attorney-client or the deliberative process privileges.[15]

The court has reviewed all the documents identified on privilege logs I and Q involving communications between Ms. Spiegel and Mr. Cocuzza.  While the majority of the documents are protected from disclosure by the attorney-client and/or the deliberative process privilege, the court finds that some documents are not privileged.  Accordingly, the following documents shall be produced within ten days: PL 01492, PL 01749-54, PL 01894, and PL 02459-64.  Documents PL 01492 and PL 01894 do not appear to involve legal advice, but merely relate to scheduling.

---

[15]*See* Stipulation [106] at ¶¶ 13-17.

Documents PL 01749-54 and PL 02459-64, spreadsheets prepared by Mr. Cocuzza, are not privileged and were actually produced as attachments to the Stipulation [106].  However, the Government may redact Ms. Spiegel's hand-written notes on document PL 02459.

The remaining documents are privileged and need not be produced.  Accordingly, Plaintiff's motion to compel the requested documents is granted in part and denied in part as set forth above.

> ***Second Request No. 1:*** **Please produce all documents relating to the examination of any tax period ending in 2001 and 2002 for Nevada, Carson, Reno, and Mr. and Mrs. J. Kelley Williams, including, but not limited to, any reports generated by Defendant during the examination of the three LLCs and Mr. and Mrs. Williams.**

This request is even broader than the First Request No. 1; accordingly, the same analysis applies.  During the discovery conference, the Government indicated that it has now produced all documents responsive to this request with the exception of privileged documents.

On April 16, 2008, the Government identified the documents withheld on the basis of privilege that are responsive to this request.  After conducting an *in camera* review of a sampling[16] of the documents withheld on the basis of the attorney-client privilege, the court concludes that such documents are protected.  Accordingly, Plaintiff's motion to compel production of the remaining documents is denied.

> ***Second Request No. 2:*** **For any tax period ending in 2001 or 2002, please produce any and all drafts, memoranda, correspondence, and other documents prepared with the expectation of disclosure to Nevada, Carson, Reno, its member/partners, and/or its representatives, including documents relating to:**

---

[16]Because of the volume of the withheld documents, the court did not review every withheld document, but rather, inspected samples of the withheld documents.

20

> **a.** **Any IRS Examination Reports issued to Nevada, Carson, Reno, and/or their member/partners, and**
> **b.** **Any FPAA issued to Nevada, Carson, and Reno.**

The Government has indicated that other than correspondence sent by the IRS directly to Plaintiff or its representatives, no other documents were prepared with the expectation of disclosure to Plaintiff.  *See* Government's Response to Plaintiff's Second Request for Production, Ex. D to Plaintiff's Memorandum [58-5].  That response appeared sufficient. However, the Government's response then inexplicably raises a number of objections and qualifiers, which led to an argument between the parties as to whether drafts of certain documents and other records should be produced.

Rather than identifying specific documents on the privilege logs Plaintiff desires the court to review, Plaintiff again challenges every withheld document.  An *in camera* review of this magnitude is impractical, if not impossible, and places an unreasonable burden on the court and the parties.  *See supra, United Investors Life Ins. Co.*, 233 F.R.D. at 486 ("This court will not grant an in camera inspection where, as here, there are potentially hundreds, perhaps thousands, of documents which would require review.  To inspect the documents at issue in this action would constitute a great and unnecessary expenditure of judicial resources."); *see also* Fed. R. Civ. P. 26(b)(2)(C) (stating that the court may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit").

Notwithstanding the burden of reviewing the documents, the court finds that the drafts of the reports and the FPAAs are of marginal relevance and are not reasonably likely to lead to the discovery of admissible evidence.  *See Ardo v. Comm'r of Internal Revenue*, 104 T.C. 677, 692-93 (Tax Ct. 1995) (holding that production of draft statutory notices of deficiency was not

reasonably likely to lead to the discovery of admissible evidence and need not be produced); *see also* footnote 13.  Accordingly, Plaintiff's motion to compel production of the requested documents is denied.

> ***Second Request No. 3:*** **Please produce all timekeeping records and case management reports of any employee or agent of Defendant prepared in relation to the examination of Nevada, Carson, Reno, and Mr. and Mrs. Williams for any tax period ending in 2001 and 2002.**

During the discovery conference, the Government indicated that it had withdrawn its relevancy objection and produced all potentially responsive documents to this request in redacted form, as identified under the category "Examining Officer's Activity Reports," on page four of the document titled "Analysis of Withheld Internal Revenue Service Documents Related to Nevada/Carson/Reno/Williams Audits," produced by the Government as a visual aid for the discovery conference on April 11, 2008.  According to the Government's response and the privilege logs attached as Exhibits O, L, I and K [104] to the Government's Supplemental Brief [91], and Privilege Log- Reno, produced on or about March 13, 2008, the documents were redacted based on an assertion of the attorney-client privilege, the deliberative process privilege, and/or the Privacy Act, 5 U.S.C. § 552(a).  Additionally, the Government withheld documents 02-03-JKW-00258-70 as non-responsive.

After conducting an arduous *in camera* inspection of the approximately 684 documents withheld and/or redacted, the court finds that the vast majority of the documents are privileged and need not be produced.  However, a number of the redacted entries are not privileged and therefore, should be produced.

In reviewing the thousands of entries contained in the redacted documents, the court first

finds that the deliberative process privilege does not apply.  The entries on the activity reports describe acts performed by an IRS agent during the process of the examination of the tax returns at issue, and do not reflect advisory opinions,  recommendations, or deliberations regarding a governmental decision or policy.  *See Klamath*, 532 U.S. at 8.

Additionally, the review revealed a few isolated incidents where other taxpayers' information was redacted.  The court agrees that this information is protected from disclosure by the Privacy Act.

The court's *in camera* review of the redacted records did confirm that, in most instances, the attorney-client privilege was properly asserted.  However, many entries or portions thereof merely involve a reference to counsel, and do not involve communications between counsel and client seeking or giving legal advice.  Additionally, some redacted entries do not even reference counsel, and were inexplicably, or perhaps inadvertently, redacted.  These entries, identified on the schedule attached as Exhibit A, are not protected by the attorney-client privilege, or any other privilege, and should be produced.

Moreover, many of the redacted entries are duplicate entries, and sometimes appeared as many as four times.  The court did not attempt to list every duplicate entry that is not privileged. Therefore, the attached schedule is not exhaustive, and it is the Government's obligation to produce the duplicate entries not listed on the attached schedule, to the extent they appear in other activity reports within the described group of documents reviewed.

Accordingly, Plaintiff's motion to compel the requested documents is granted in part and denied in part as set forth above.

*Second Request No. 4:* **To the extent not addressed above or in Plaintiff's First Request for Production of Documents, please produce any and all administrative files, whether in written or electronic (computer) form, including, without limitation, any and all revenue agent's reports, advisory opinions, notes, interviews, workpapers, protests, memoranda, correspondence, computations, summaries, discussions, agreements regarding disposition, documents relating to the review and issuance of the audit report, FPAAs, Notice of Deficiency, the Quality Review Staff, filing or photographic other documents, and drafts of these materials addressing in any manner the proposed adjustments to the reported income, deductions, and other tax attributes of Nevada, Carson, and Reno, and/or Mr. and Mrs. Williams for any tax period ending in 2001 and 2002.**

Plaintiff's motion to compel the requested documents is denied for the reasons set forth under First Request No. 1 above.

*Second Request No. 5:* **Please produce any files maintained by Defendant relating to Notice 2002-50, 2002-2 C.B. 98 and the related Coordinated Issue Paper as amended (U/L 9200.21-00), including, but not limited to, any communication between Defendant's employees and/or agents involved in this case, and the authors of Notice 2002-50 and the related Coordinated Issue Paper.**

Plaintiff's motion to compel the requested documents is denied for the reasons set forth under First Request Nos. 13 and 14 above.

*Second Request No. 6:* **Please produce the following:**

a.   **The timekeeping records and case management reports of Defendant in relation to the preparation of the Coordinated Issue Paper for Notice 2002-50.**

b.   **All documents relied upon and/or maintained by Defendant for Defendant's preparation of Coordinated Issue Paper for Notice 2002-50.**

c.   **All documents describing any economic, legal, tax, or financial benefit which could be derived by engaging in the transactions described in Notice 2002-50 and the related Coordinated Issue Paper.**

d.   **Any other documents maintained by Defendant with respect to the drafting, proposal, reservations, vagueness, criticisms, abandonment, and/or inconsistent application of Notice 2002-50 and the related Coordinated Issue Paper.**

24

Plaintiff's motion to compel the requested documents is denied.  This request is similar to First Request Nos. 13 and 14; accordingly, the same analysis set forth above applies.  This request is unreasonably broad, and seeks documents which are only marginally relevant. However, as set forth in a previous Order [65], Plaintiff is not precluded from asking questions regarding these issues during depositions, and it appears it has already done so.[17]  *See supra*, footnote 13; *see also* Plaintiff's Supplemental Brief [92] at 9, 17 (quoting deposition testimony of Linda M. Scheick and Linda M. Davis).

IT IS, THEREFORE, ORDERED that the Plaintiff's Motion to Compel [57] is GRANTED in part and DENIED in part as set forth above.

SO ORDERED AND ADJUDGED this the 12th day of May, 2008.

s/ Michael T. Parker
United States Magistrate Judge

---

[17]The court allowed limited discovery of the factual foundations of the Notice and the Coordinated Issue Paper, subject to the applicable privileges.

25